### HARVEY HUBBELL, Inc., v. GAYNOR ELECTRIC CO., Inc.

District Court, D. Connecticut. September 12, 1929.

No. 1960.

Clifton V. Edwards, of New York City, for plaintiff.

Melville Church and C. B. Des Jardins, both of Washington, D. C., for defendant.

THOMAS, District Judge. This suit is predicated upon an alleged infringement of United States letters patent No. 1,146,938, granted to Harvey Hubbell on July 20, 1915, on an application filed July 23, 1914. The patent is now owned by the plaintiff corporation.

The invention of the patent in suit relates to an attachment plug receptacle, which is connected to the electric current supply, and which has openings to receive the contact blades on the end of the attachment plug, with a cord connecting to electric devices, such as lamps, toasters, heaters, vacuum cleaners, irons, and various other utensils. Attachment plugs in general use have two kinds of contact blades, which are inserted into the plug receptacle. One kind is called tandem blades, because they lie one ahead of the other, and the other kind is called parallel blades, because each blade is parallel to the other blade. The invention relates more particularly to that class of plug receptacles which are adapted to receive either of the types of standard plugs in general use.

Plaintiff relies upon claims 1, 2, 3, 7, and 11 which read as follows:

"1. In an attachment plug receptacle a covering block provided with T-shaped slots, the transverse portions of which are parallel and are spaced apart to receive the knife blade contacts of standard plugs when placed parallel, and the longitudinal portions of which extend in opposite directions and are adapted to receive the knife blade contacts of standard plugs when placed in alinement.

"2. A covering block of the character described provided with T-shaped slots, substantially as described, for the purpose specified.

"3. In a structure of the character described, the combination with a base and a covering block having T-shaped slots, of triple spring contact plates comprising two plates placed opposite each other and adapted to coact with knife blade contacts in alinement and a third spring contact plate at right angles to said other spring contact plates and adapted to coact with said other spring contact plates and with knife blade contacts in parallel relation."

"7. In a structure of the character described, triple contact plates comprising spring plates having contiguous operative faces and a spring plate lying at right angles to said other spring plates and provided on its opposite edges with bosses, substantially as described, for the purpose specified."

"11. In a structure of the character described, the combination with a base and contacts secured thereto, each contact comprising spring plates having operative faces facing each other and a spring plate lying at right angles to said other spring plates, of a covering block having recesses to receive said contacts and T-shaped slots communicating with said recesses, substantially as described, for the purpose specified."

As appears from the record, the introduction to the trade of the two different types of attachment plugs created a demand for means whereby these two types could be used interchangeably with the same outlet receptacle. In the early stages of the art,

the plaintiff and others, in an attempt to meet the need, resorted to the use of a multiple attachment plug receptacle in conjunction with an adapter like Plaintiff's Exhibit 6. This combination involved the use of a multiple plug receptacle having two sets of separate tandem slots and contacts. An adapter having tandem blades was inserted into one pair of the tandem slots, and a parallel blade receiving plug having a screw base was screwed into the adapter. Then a parallel bladed plug could be fitted to the parallel plug held by the adapter, and a tandem bladed plug could be fitted to the other pair of tandem slots and contacts. Thus an outlet was available for use with either type of plugs. This combination, while serving the purpose, was complicated. The inventor says in his patent that he discovered that in the two types of plugs "the space between the inner edges of the alined knife blade contacts in one type corresponds with the distance between the inner face of the parallel knife blade contacts in the other type."

Based on this discovery, it is evident that the patentee made the invention set forth in the patent in suit. It seems to consist principally in combining the contact structure of his early patent, No. 774,251, of November 8, 1904, with a pair of T-slots adapted to receive the blades of either type of attachment plug.

The attachment plug receptacle of the patent in suit comprises an insulating base 10 upon which one pair of triple spring contacts is mounted, adapted to receive either the parallel or tandem blades of the plugs shown in Figures 5 and 6 of the drawing. A covering block 11 of insulating material is secured to the base, and this plug is provided with T-shaped slots, comprising transverse portions 20, lying parallel with each other and adapted to receive parallel knife blade contacts, and longitudinal portions 21, extending in opposite directions and adapted to receive tandem knife blade contacts. The triple spring contacts, which are also adapted to receive either the parallel blades or the tandem blades of the two types of plugs, each comprise two spring plates 22, having downwardly turned operative faces 23 facing each other, and a spring plate 24 lying at right angles to the spring plates 22 and contiguous thereto. The contact plates 24 are provided on their opposite edges with bosses 26 which co-operate with recesses 16 in the parallel plug blades shown in Figure 5 of the drawings, and thereby insure perfect electrical connection. When an attachment plug having parallel knife blade contacts, such as is shown in Figure 5, is en-

gaged with the receptacle, the knife blade contacts are passed into the transverse portions 20 of the T-shaped slots and between the ends of spring contact plates 22 and spring contact plates 24. When a plug having tandem knife blade contacts, such as is shown in Figure 6, is engaged with the receptacle, the knife blade contacts are passed into longitudinal portions 21 of the T-shaped slots and between the operative faces of the spring contact plates 22. It will thus be seen that the contact plates 22 operate as contacts, whether the received blade is tandem or parallel.

The defenses are:

(1) That the patent is invalid because it does not embody invention, and does not represent a patentable advance over the prior art.

(2) That as to the claims directed to the triple spring contacts the defendant does not infringe, because it does not use these contacts.

(3) That as to the other claims there is no infringement, because the defendant does not make receptacles having cover blocks such as shown in the patent and specified in the claims.

The first defense relies to a great extent on the patent to Burton, No. 1,169,613, which discloses an attachment plug receptacle in which there is one separate set of openings and separate contacts for a tandem plug, and another separate set of openings and separate contacts for a parallel bladed plug. In other words, there are four slots in the face of the receptacle, and four contacts and the contacts are so wired that, whichever pair is used, opposite polarity is preserved. This patent was declared invalid by the Circuit Court of Appeals of the Second Circuit in Bryant Electric Co. v. Harvey Hubbell, Inc., 267 F. 572, on the ground that there is absolutely no mutuality or coaction between the two sets of slots and contacts, because the device was nothing more than an aggregation of an old parallel plug receptacle and an old tandem plug receptacle.

Defendant contends that there was no patentable concept in Burton's four-slot device, and that the patentee Hubbell did not make any invention when he rearranged the four slots, by shifting the tandem slots 90 degrees on the face of the covering block, so that the inner end of each tandem slot would just merge with the center of the corresponding parallel slot—asserting that no new function, result, or mode of operation came from this rearrangement, and that the slots function just as before; that one set receives parallel blades and the other set receives tan-

dem blades, and when tandem blades are in place in the tandem slots the parallel slots are useless, and do not function, and when the parallel blades are inserted in the parallel slots the tandem slots are inoperative. It is clear to me that the trouble with this kind of a defense is that it is based on an ex post facto judgment, and even then it entirely disregards the co-operation between the T-slots and a single pair of triple spring contacts. There is no question but that Hubbell, granting for purposes of this decision that he was acquainted with the Burton device at the time he conceived his invention, simplified the Burton device by omitting one set of contacts and by rearranging the two sets of slots, so that the retained one set of contacts performs the function of two sets of such elements. I am of the opinion that the omission of an element in a combination constitutes invention, provided the result of the new combination is the same as before. Although one set of contacts is omitted, there is no question about the result of Hubbell's combination. It is the same as that of the Burton device, and I am therefore constrained to hold that claims 1, 2, and 3 and claim 11 of the patent in suit, which specify the T-shaped slots, are valid.

The validity of claim 7 has not been seriously attacked. An attempt has been made to compare this claim with the triple contact plates disclosed in the earlier Hubbell patent, No. 774,251. However, the spring plate of this patent which lies at right angles to the pair of spring plates is not provided on its opposite edges with bosses for engagement with parallel bladed plugs. Consequently claim 7 is valid.

Plaintiff's Exhibits 17, 18, and 19 are samples of the receptacles admitted to have been made and sold by the defendant. Each of them comprise an insulating body having contact chambers therein with a set of T-slots extending through the upper faces to the upper ends of these contact chambers. The contacts are mounted within the contact chambers, so as to receive either parallel or tandem blades inserted through the slots in the same manner as they are inserted into the device disclosed by the patent in suit. The contacts are supported in the contact chambers by spring tongues which snap over shoulders in the receptacle body. The lower face of the receptacle body is covered by a sheet of insulating material, and the receptacle is supported in the wall box by the usual supporting yoke.

The defendant manufactures both single and duplex receptacles. Having reference to the middle left-hand figure of Defend-ant's Exhibit C, it appears that the contacts of defendant's single receptacle each comprise two spring plates 1 and 2, which face each other, and the spring plate 2 has a slot 3 formed therein. When the receptacle is used with a parallel bladed plug, the blade A is inserted between the spring plates 1 and 2, as shown in the left-hand middle figure of Defendant's Exhibit C, and when it is used with a tandem bladed plug the blade B is inserted in the slot 3, with the edge of the blade engaging the spring plate 1 and the faces of the slot 3 engaging the opposite faces of the blade B, as shown in the right-hand middle figure of Defendant's Exhibit C. The contact of defendant's duplex receptacle is illustrated in the lower figures of Defendant's Exhibit C, which shows a plate 10 and an oppositely facing plate 13 with the slot 14. Its operation in connection with the two standard types of plugs is practically the same as that described in connection with defendant's single receptacle.

This brings us to the question of infringement. It is asserted by defendant that there is no infringement, because its receptacles have no covering blocks, such as is shown in the patent in suit and specified in claims 1, 2, 3, and 11.

Claims 1 and 2 are directed to the novel slots, and read directly on defendant's devices, Plaintiff's Exhibits 17, 18, and 19. There is no question, as it appears to me, but that the insulating body in which the contacts are disposed serves to cover these contacts, and it is immaterial whether the contacts are mounted on this body, as in defendant's device, or on a base, as in plaintiff's receptacles, particularly when the claims specify a single element only. In such case the relation of this single element to other elements may, obviously, be disregarded, and the technical term by which it is denoted be left out of consideration.

Claim 3 covers the combination of three elements:

First—"A base and a covering block having T-shaped slots."

In defendant's receptacles, the base and cover are made integral, but the slots are in the same relative position and function in the same manner as if separate and covering pieces were used.

Second—"Contact plates comprising two plates placed opposite each other and adapted to coact with knife blade contacts in alinement."

The middle right-hand figure of Defendant's Exhibit C, illustrating defendant's single receptacle, shows that tandem blades are gripped between the two sections of the plate

*2;* the blade being located in the slot *3.* In defendant's duplex receptacle, shown in the lower right-hand figure in Defendant's Exhibit C, the tandem blade *B* is likewise gripped between the two sections of the plate *13.* The two sections of either plate *2* or *13* are in the form of one integral piece, but they constitute two contact plates adapted to coact with knife blade contacts in alinement.

Third—"A third spring contact plate at right angles to said other spring contact plates and adapted to coact with said other spring contact plates and with knife blade contacts in parallel relation."

Referring to the middle left-hand figure of Defendant's Exhibit C, the third spring *1* is at right angles to the acting faces of the spring contact plate sections *2*—the faces which engage the tandem type of blades. The same relation of elements is shown in the lower figures of Defendant's Exhibit C.

In view of the foregoing I must hold that defendant's devices, Plaintiff's Exhibits 17, 18, and 19, infringe claim 3 of the patent in suit.

Claim 7 relates to the feature of the bosses *26* on opposite edges of the third spring plate. This feature is absent in defendant's devices, and there is no corresponding element in defendant's construction for engagement with the parallel blades of a plug. Hence this claim is not infringed by defendant's devices.

Claim 11 is directed to the same subject-matter as claim 3. In fact, it is somewhat broader, because it calls for a "contact comprising spring plates having operative faces facing each other and a spring plate lying at right angles to said other spring plates." The defendant infringes this claim, and the reasons stated with reference to claim 3 apply here.

Having decided that the claims are valid, and that the defendant infringes claims 1, 2, 3, and 11, the plaintiff is entitled to the usual decree for infringement, reference, accounting, and costs; and it is so ordered.